IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

SANDRA M. DAVIS,

        Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

No. C15-4002

REPORT AND RECOMMENDATION

## TABLE OF CONTENTS

I.    *INTRODUCTION* ......................................... 2

II.   *PROCEDURAL BACKGROUND* ........................... 2

III.  *PRINCIPLES OF REVIEW* ............................... 3

IV.  *FACTS* ................................................ 5
    A.   *Davis' Education and Employment Background* .............. 5
    B.   *Administrative Hearing Testimony* ...................... 5
        1.   *Davis' Testimony* .............................. 5
        2.   *Vocational Expert's Testimony* ................. 6
    C.   *Davis' Medical History* ............................. 7

V.   *CONCLUSIONS OF LAW* ............................... 11
    A.   *ALJ's Disability Determination* ...................... 11
    B.   *Objections Raised By Claimant* ...................... 13
        1.   *Dr. Bansal's Opinions* ........................ 13
        2.   *Credibility Determination* ..................... 16
        3.   *RFC Assessment* ............................. 21

VI.  *CONCLUSION* ....................................... 23

VII. *RECOMMENDATION* ................................. 24

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Sandra M. Davis on January 21, 2015, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits. Davis asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Davis requests the Court to remand this matter for further proceedings.

# II. PROCEDURAL BACKGROUND

On May 7, 2012, Davis applied for disability insurance benefits.[1] In her application, Davis alleged an inability to work since May 16, 2011 due to bulging discs in her back, depression, anxiety, carpal tunnel syndrome, fibromyalgia, and arthritis. Davis' application was denied on September 20, 2012. On December 12, 2012, her application was denied on reconsideration. On August 28, 2013, Davis appeared via video conference with her attorney before Administrative Law Judge ("ALJ") Denzel R. Busick for an administrative hearing. Davis and vocational expert Thomas Audet testified at the hearing. In a decision dated September 19, 2013, the ALJ denied Davis' claim. The ALJ determined that Davis was not disabled and not entitled to disability insurance benefits because she was functionally capable of performing work that exists in significant numbers in the national economy. Davis appealed the ALJ's decision. On November 12, 2014, the Appeals Council denied Davis' request for review. Consequently, the ALJ's September 19, 2013 decision was adopted as the Commissioner's final decision.

On January 21, 2015, Davis filed this action for judicial review. The Commissioner filed an Answer on March 27, 2015. On April 29, 2015, Davis filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she is not

---

[1] Davis' protective filing date was April 30, 2012.

disabled and that she is functionally capable of performing other work that exists in significant numbers in the national economy. On May 26, 2015, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On September 2, 2015, Judge Mark W. Bennett referred this matter to a magistrate judge for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2011)).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012);

3

*see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Draper v. Colvin*, 779 F.3d 556, 559 (8th Cir. 2015) ("'If substantial evidence supports the Commissioner's conclusions, th[e] court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome.' *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)."); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported

a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## IV. FACTS

### A. Davis' Education and Employment Background

Davis was born in 1970. In school, she did not complete the ninth grade. Later, she earned her GED. In the past, she worked as a school cook, head start teacher, university maintenance worker, night supervisor at a home for disabled children, and substitute school cook/custodian.

### B. Administrative Hearing Testimony

#### 1. Davis' Testimony

At the administrative hearing, Davis reported that her primary diagnoses were fibromyalgia, fatigue, and palindromic rheumatism. She also indicated that she had quit her most recent job as a maintenance worker at Buena Vista University, due to leg pain. Davis stated that her back and leg pain are aggravated with standing for long periods of time, or walking long distances. According to Davis, her pain and fatigue can be treated with medication, but the medication makes her "tired" and "forgetful."

Davis also described difficulties with joint pain:

> It's a very fast onset. It just appears out of nowhere. And it swells up very quickly and is red and hot to the touch. It's like a bursting pain inside of your joints. If you've ever had gout, it's comparable to that kind of pain. It happens in my hand and wrists, my knee and my foot. Not all at the same time. I haven't had that happen, but it'll happen in those joints so far. When it does happen, in my case it can last up to three days. . . . But it does disappear as fast as it comes on.

(Administrative Record at 73.)

Additionally, Davis discussed her difficulties with fibromyalgia pain. She testified that lack of sleep and stress causes her fibromyalgia pain to flare up. Davis described her functional abilities when she has a flare-up of fibromyalgia pain as follows:

> On a good day with fibromyalgia, it's almost like you have the
> flu. There's just aches and pains and fatigue. I usually can do
> a pretty normal day at home with just doing some dishes, and
> cooking, if it needs to be done. If it's a severe day, my
> husband will take over the home chores for me, and he is able
> to see what kind of day I'm having when he walks in from his
> work.

(Administrative Record at 76-77.) When her fibromyalgia pain flare-up is severe, she stated that she generally spends her entire day lying down. According to Davis, on such a day, she stands and walks only to use the bathroom.

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided the vocational expert with a hypothetical for an individual who is able to:

> work at a light level; pick up 20 pounds occasionally,
> 10 pounds or less frequently; sit six hours in an eight hour
> workday; stand and walk combined up to six hours; no limits
> in reaching; however, climb stairs only occasionally, and
> ladders only occasionally. They can balance, crouch, kneel,
> stoop, and crawl, but only occasionally. No manipulation
> limits; no visual limits with glasses; no communication limits.
> They would have to avoid concentrated exposure to cold
> temperatures and high vibrations.

(Administrative Record at 80-81.) The vocational expert testified that under such limitations, Davis could perform her past job as a preschool teacher "as it's described in the DOT, but not as she did it."[2] The vocational expert also testified that under such limitations, Davis could perform the following light level jobs: (1) cashier II, and (2) inspector/packager.

Next, the ALJ changed the hypothetical as follows:

> Q: Okay. We change the hypothetical such that we have
> a person that is in a grey area of light/sedentary. They

---

[2] Administrative Record at 81.

> can pick up to 20 pounds on occasion, 10 pounds or
> less frequently; sit six hours in an eight hour workday;
> stand and walk combined about three. Everything else
> stays the same. Would she be able to do [the preschool
> teacher] job then?

A:    No.

Q:    Would she have acquired skills that she could transfer
      to other jobs that would fit the hypothetical?

A:    No.

Q:    Would there be unskilled work such a person could
      perform in the regional or national economy?

A:    At the sedentary level, yeah.

(Administrative Record at 81.) The vocational expert testified that under such limitations, Davis could perform the following sedentary jobs: (1) egg processor, (2) order clerk, and (3) final assembler.

Finally, the ALJ provided the vocational expert with a third hypothetical for an individual who:

> as a result of a combination of impairments, does suffer from
> a degree of fatigue as an eight hour workday proceeds. In
> other words, their ability to stay on task, perform throughout
> a full eight hour work period will become reduced, so that by
> the time they reach the last one to two hours of a normal eight
> hour work period, the person's overall productivity, if you
> will, is going to drop down to about 70, 75 percent capacity
> compared to an average normal worker.

(Administrative Record at 83.) The ALJ added that such drop-off of productivity would happen on a daily or every other day basis. Under such limitations, the vocational expert testified that Davis would not be competitively employable.

### C. Davis' Medical History

On May 16, 2011, Davis met with Dr. Theodore R. Liautaud, D.O., for a psychiatric diagnostic evaluation. Davis was referred to Dr. Liautaud by her primary care physician for problems with anxiety, panic attacks, and depression. Dr. Liautaud noted

that Davis "reported vegetative symptoms of depression including problems with sleep and maintaining sleep, energy and stamina excess at times when anxious and then loss when tired."[3] Davis also reported:

> crying spells[, and that she] cries easily. Reports mood swings, irritability, temper and anger control problems[.] . . . Reports concentration and memory problems with . . . mood variation in the evening. Avoidant and withdrawn behaviors, self esteem loss, guilt at times.

(Administrative Record at 334.) Upon examination, Dr. Liautaud diagnosed Davis with major depressive disorder, generalized anxiety disorder, panic disorder, somatization disorder, and somatic pain disorder. Dr. Liautaud recommended medication and therapy as treatment.

On February 10, 2012, Davis met with Dr. Sunil Bansal, M.D., for an independent medical evaluation. Davis' primary complaint was back pain. At the time of the evaluation, Davis had 20-pound permanent lifting restriction. Dr. Bansal indicated that "bending, twisting, and lifting cause her the most problems."[4] Dr. Bansal noted other difficulties, including lifting and standing for long periods of time. Dr. Bansal further noted that "[t]asks that are difficult for her to perform include caring for her 13-month-old grandchild."[5] As for activities of daily living, Davis stated that she has difficulties with bathing, dressing, cooking, vacuuming, mopping, and lifting heavy objects. She also complained of restless sleep, and only getting four to six hours of sleep per night. Davis described her pain as being located in her low back and down both of her legs. She stated that the pain occurs 75 to 100 percent of the time. She rated her average pain at 7 out of 10, with 10 being the greatest amount of pain. Functionally, Davis reported that the pain

---

[3] Administrative Record at 334.

[4] Administrative Record at 346.

[5] Id.

prevents her from: (1) lifting heavy objects, (2) walking more than one mile, (3) sitting for more than 30 minutes, and (4) standing for more than 30 minutes. Upon examination, Dr. Bansal diagnosed Davis with T8-T9 left paramidline disc protrusion, T7-T8 and T6-T7 posterior disc herniations, T10-T11 left posterolateral disc protrusion, and L1-L2 posterior disc protrusion. Dr. Bansal continued Davis' 20-pound permanent lifting restriction, and opined that Davis should avoid frequent bending, squatting, climbing, twisting, or kneeling. Dr. Bansal also opined that Davis should not stand or walk for more than 20 minutes at a time. Lastly, Dr. Bansal indicated that Davis "needs to change positions frequently to reduce her pain pathology."[6]

On March 26, 2012, Davis was referred to Robert C. Wisco, M.D., for an assessment of her issues with pain and possible fibromyalgia. Dr. Wisco reviewed Davis' medical history as follows:

> Ms. Davis states that perhaps 1-2 years ago she began to note some discomfort in both thighs and calf muscles. There was no preceding injury or illness. At first, this was a moderate discomfort, made worse with activity. It has persisted and does not seemed [sic] to have changed with time. Over a year ago, she began to note some achiness in her arms. If she would hold her granddaughter in either arm, she could note a persistent achiness and tiredness. This has persisted. It may have increased in severity. Also, over at least the last year, she has noted at times some twitching of the muscles in her arms and legs. On occasion, she can note some muscle knotting in either upper arm. Within the last 6-10 months, she has noted some onset of pain primarily about her mid and low back. This has become a mild to moderate discomfort, again made worse when she does any amount of lifting, bending or prolonged standing.

---

[6] Administrative Record at 353.

(Administrative Record at 311.) Upon examination, Dr. Wisco diagnosed Davis with "[p]rogressive total body pain process, certainly consistent with fibromyalgia."[7] Dr. Wisco noted that Davis has multiple areas of soft tissue tenderness in a pattern suggestive of fibromyalgia. Dr. Wisco also opined that Davis' associated symptoms, including chronic headaches, nonrestorative sleep, and irritable bowel syndrome, are also consistent with a diagnosis of fibromyalgia.

In June 2012, Davis returned to Dr. Wisco for a follow-up appointment. Dr. Wisco noted that Davis continued to have "generalized achiness," with varying degrees of discomfort through her forearms, upper arms, her entire back, thighs, and calf muscles. Upon examination, Dr. Wisco continued his diagnosis of fibromyalgia. Dr. Wisco opined that Davis' "examination remains rather classic for [fibromyalgia]."[8] Dr. Wisco recommended medication as treatment.

On September 18, 2012, Dr. Gary Cromer, M.D., reviewed Davis' medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Davis. Dr. Cromer determined that Davis could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Cromer also determined that Davis could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Cromer further opined that Davis should avoid concentrated exposure to extreme cold and vibration. Dr. Cromer found no manipulative, visual, or communicative limitations.

---

[7] *Id.* at 312.

[8] Administrative Record at 310.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Davis is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014); *Young v. Astrue*, 702 F.3d 489, 490-91 (8th Cir. 2013). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014) (citing *King v. Astrue*, 564 F.3d 978, 979 n. 2 (8th Cir. 2009)); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual

functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Davis had not engaged in substantial gainful activity since May 16, 2011. At the second step, the ALJ concluded from the medical evidence that Davis has the following severe impairments: fibromyalgia syndrome, degenerative disc disease in the cervical, thoracic, and lumbar spine, and obesity. At the third step, the ALJ found that Davis did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Davis' RFC as follows:

> [Davis] has the RFC to perform less than a full range of light work[.] . . . She can do as follows: She can lift and carry 20 pounds occasionally and 10 pounds or less frequently. With normal work breaks, she can sit 6 hours, as well as stand and walk, combined, 6 hours in an 8-hour day. She has no limitations in reaching. She can climb stairs and ladders occasionally, as well as balance, crouch, kneel, stoop and crawl occasionally. She has no manipulation limitations and no visual limitations with glasses. She has no communication limitations. She must avoid concentrated exposure to temperature extremes and high vibration.

(Administrative Record at 33.) Also at the fourth step, the ALJ determined that Davis was unable to perform her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Davis could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Davis was not disabled.

### B. Objections Raised By Claimant

Davis argues that the ALJ erred in three respects. First, Davis argues that the ALJ failed to properly evaluate the opinions of Dr. Bansal, an examining physician. Second, Davis argues that the ALJ failed to properly evaluate her subjective allegations of pain and disability. Lastly, Davis argues that the ALJ's RFC assessment is flawed because it is not supported by substantial evidence.

### 1. Dr. Bansal's Opinions

Davis argues that the ALJ failed to properly evaluate the opinions of Dr. Bansal, a consultative examining doctor. Davis maintains the ALJ failed to properly consider Dr. Bansal's opinions in determining her RFC. Davis further argues that the ALJ failed to properly weigh Dr. Bansal's opinions, or give good reasons for discounting Dr. Bansal's opinions with support from the record. Davis concludes that this matter should be remanded for further consideration of Dr. Bansal's opinions.

13

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 416.927(c). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

An ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)).

The ALJ addressed Dr. Bansal's opinions as follows:

> [Davis] underwent a May 2011 independent medical exam secondary to her workers compensation claim. She was limited to lifting 20 pounds, with no frequent bending, squatting, climbing, twisting, or kneeling, and frequent position changes, with no standing or walking for longer than 20 minutes (Ex. 12F). This opinion receives some weight. The limitation to "light" lifting and carrying is consistent with other evidence of record and other opinions. However, the limitation to frequent positional changes is not consistent with treating source recommendations nor is it consistent with the limited objective findings reflected in the record, including no reduction of strength or range of motion and normal gait.

(Administrative Record at 37.)

Davis maintains that the ALJ's reasoning is too generic and fails to adequately explain his reasons for not giving weight to Dr. Bansal's opinions regarding "frequent positional changes" with evidence from the record. Contrary to Davis' assertion, in his decision, the ALJ thoroughly addressed the objective medical evidence and Davis' treatment history, referred to in his discussion of Dr. Bansal's opinions. For example, in his decision, the ALJ noted that:

> Although there is adequate objective evidence to show her physical impairments are "severe," it is not supportive of the degree of limitation she reports. As already discussed, MRI findings reflect abnormalities, but none that are particularly significant.[9] She has consistent tenderness, never described as extreme or exquisite, and limited to only some joints. Her range of motion and strength have consistently been full, and there has been no swelling or redness upon any exam except one, during an acute gout attack in the right wrist (Ex. 5F, p. 7, 12, 14, 18; 6F, p. 3; 7F, p. 1; 13F, p. 1). She has a normal gait and station and records do not reflect that she appears uncomfortable, except at her psychological consultative exam, when she shifted positions and had impaired posture, locomotion, and gait (Ex. 4F). However, these observations came from Dr. Valenti-Hein, who is a licensed psychologist but not a medical doctor, and thus receive limited weight.

(Administrative Record at 35.) In his decision, the ALJ further discussed Davis' treatment history:

> Since her May 2011 alleged onset date, she has presented somewhat sporadically for pain. She presented in May 2011 alleging back pain and reported she was quitting her job secondary to pain (Ex. 5F, p. 18). She did not present again related to her pain until four months later, in September 2011

---

[9] *See* Administrative Record at 35 (ALJ discussing Davis' degenerative disc disease, and noting that "[t]he scans, though showing numerous mild abnormalities, are otherwise 'grossly normal except for minimal disk bulging in the thoracic spine' (Ex. 6F, p. 12).").

(Ex. 5, p. 14). She reported ongoing diffuse back pain with radiation down her left leg. She followed up every two to three months over the next year. She consistently reported ongoing pain, but her complaints did not seem to change much in character until September 2012, at which point her fibromyalgia was "partially improved" (Ex. 6F, p. 3). She continued to treat for pain about every 2 to 3 months. In March 2013, she had a gout attack, and reported in May 2013 that she had been experiencing sudden episodes of joint pain and swelling, but as discussed above, this is attributable to her gout (Ex. 13F, p. 1; 7F, p. 1). She had some tenderness but no limitation of her range of motion and no swelling or redness upon physical examination. [Davis] had not subsequently presented for treatment at the time of the hearing.

(Administrative Record at 36.)

Having reviewed the entire record, and considered the ALJ's discussion of the objective medical evidence and review of Davis' treatment history, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Bansal. Specifically, the ALJ granted Dr. Bansal's opinions "some" weight, and addressed inconsistencies within Dr. Bansal's opinions and the record as a whole. Therefore, the Court concludes that the ALJ properly considered and applied the factors for evaluating a consultative examiner's opinions, and properly granted "some" weight to Dr. Bansal's opinions. *See Wiese*, 552 F.3d at 731. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. *Credibility Determination*

Davis argues that the ALJ failed to properly evaluate her subjective allegations of pain and disability. Davis maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly

considered Davis' testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*,

353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ addressed Davis' credibility as follows:

> The undersigned finds the medically determinable impairments could cause the alleged symptoms. However, [Davis'] statements concerning the intensity, persistence and limiting effects thereof are not entirely credible for the reasons explained herein. . . .

> Although there is adequate objective evidence to show her physical impairments are "severe," it is not supportive of the degree of limitation she reports. As already discussed, MRI findings reflect abnormalities, but none that are particularly significant. She has consistent tenderness, never described as extreme or exquisite, and limited to only some joints. Her range of motion and strength have consistently been full, and there has been no swelling or redness upon any exam except one, during an acute gout attack in the right wrist (Ex. 5F, p. 7, 12, 14, 18; 6F, p. 3; 7F, p. 1; 13F, p. 1). She has a normal gait and station and records do not reflect that she appears uncomfortable, except at her psychological consultative exam, when she shifted positions and had impaired posture, locomotion, and gait (Ex. 4F). However,

these observations came from Dr. Valenti-Hein, who is a licensed psychologist but not a medical doctor, and thus receive limited weight.

Overall, the objective findings suggest she has pain, but not of the significance alleged at the hearing.

The undersigned considered her treatment history. Objective evidence supports "severe" impairments, but does not support a finding that they are as limiting as she alleges. Since her May 2011 alleged onset date, she has presented somewhat sporadically for pain. She presented in May 2011 alleging back pain and reported she was quitting her job secondary to pain (Ex. 5F, p. 18). She did not present again related to her pain until four months later, in September 2011 (Ex. 5, p. 14). She reported ongoing diffuse back pain with radiation down her left leg. She followed up every two to three months over the next year. She consistently reported ongoing pain, but her complaints did not seem to change much in character until September 2012, at which point her fibromyalgia was "partially improved" (Ex. 6F, p. 3). She continued to treat for pain about every 2 to 3 months. In March 2013, she had a gout attack, and reported in May 2013 that she had been experiencing sudden episodes of joint pain and swelling, but as discussed above, this is attributable to her gout (Ex. 13F, p. 1; 7F, p. 1). She had some tenderness but no limitation of her range of motion and no swelling or redness upon physical examination. [Davis] had not subsequently presented for treatment at the time of the hearing.

She does not have a treatment history likely for a person as limited as she asserts. Treatment is almost entirely limited to routine follow-up appointments. She followed up with a neurology and rheumatology referral, but never presented to an emergency room for acute exacerbation of pain. The content of treatment notes does not suggest any reports of significant limitation such as an inability to sit or stand more than briefly or being bedridden many days of a month. A person with her complaints would likely make such reports to

providers, and the absence thereof suggests her allegations are overstated.

Similarly, her use of treatment methods is inconsistent with her allegations. She underwent physical therapy prior to the alleged onset date, which was successful, but has not participated in physical therapy since her alleged onset date, although there was recommendation therefor (Ex. 5F, p. 1). She has not attempted trigger point or spinal injections. She lost some weight, which is to her credit. However, her allegation that she uses crutches when her lower extremities hurt is not borne out in the medical record. As for medication use, the record is clear that she has had difficulty with numerous pain and fibromyalgia medications, including Lyrica and Cymbalta (Ex. 5F, p. 1). . . . However, at a recent appointment, she reported no difficulty with her current medication regimen of tramadol, Neurontin, and hydrocodone, at the dosages they were currently prescribed (Ex. 6F, p. 1). Overall, her use of medications only somewhat supports her allegations. She has received prescriptions of a number of medications over the years, but the record supports that at present, her regimen is working with minimal side effects.

The undersigned considered her activities of daily living. . . . She reports no difficulty caring for personal needs or preparing simple meals (Ex. 8E). She does no outdoor chores but does light housework with breaks. She shops in a grocery store with assistance of her husband. . . . She spends her day watching television, reading, and taking brief, short walks. She testified that many days, she experiences an acute pain flare rendering her bedridden.

These activities of daily living are significantly limited and consistent with her allegations. However, they receive limited weight. There is no corroboration for these extreme limitations. One would expect that if she were, at best, so limited that she can do very little throughout the day and, at worst, completely bedridden, she would have made such reports to providers and sought treatment more frequently.

> Her reports of her activities of daily living are simply not
> credible when juxtaposed against the backdrop of the entire
> record.
>
> The undesigned considered [Davis'] work history. She has a
> decent work history for the past 7 years, but prior to that time,
> her work history was spotty. This offers mixed support for
> her allegations.

(Administrative Record at 35-37.)

It is clear from the ALJ's decision that he thoroughly considered and discussed Davis' treatment history, the objective medical evidence, her functional restrictions, activities of daily living, work history, and use of medications in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Davis' subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Davis' subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. RFC Assessment

Davis argues that the ALJ's RFC assessment is flawed. Specifically, Davis argues that the ALJ's RFC assessment is not supported by substantial evidence. Davis concludes

that this matter should be remanded for a new RFC determination based on a fully and fairly developed record.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately

developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In determining Davis' RFC, the ALJ thoroughly addressed and considered Davis' medical history and treatment for her complaints.[10] The ALJ also properly considered and thoroughly discussed Davis' subjective allegations of disability in making his overall disability determination, including determining Davis' RFC.[11] Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Davis' medical records, observations of treating and non-treating physicians, and Davis' own description of his limitations in making the ALJ's RFC assessment for Davis.[12] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes that Davis' assertion that the ALJ's RFC assessment is flawed is without merit.

## VI. CONCLUSION

I find that the ALJ properly considered and weighed the opinions of Dr. Bansal, properly determined Davis' credibility with regard to her subjective complaints of pain and disability, and properly determined Davis' RFC based on a fully and fairly developed

---

[10] *See* Administrative Record at 35-37 (providing a thorough discussion of Davis' overall medical history and treatment).

[11] Administrative Record at 35-37 (providing a thorough discussion of Davis' subjective allegations of disability).

[12] *Id.* (providing thorough discussion of the relevant evidence for making a proper RFC determination).

record. Accordingly, I believe the ALJ's decision is supported by substantial evidence and should be affirmed.

## VII. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **AFFIRM** the final decision of the Commissioner of Social Security and enter judgment against Davis and in favor of the Commissioner.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court.

DATED this 29th day of _October_, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA